## ILLINOIS *v.* FISHER

No. 03–374.   Decided February 23, 2004

PER CURIAM.

The Appellate Court of Illinois held here that the Fourteenth Amendment's Due Process Clause required the dismissal of criminal charges because the police, acting in good faith and according to normal police procedures, destroyed evidence that respondent had requested more than 10 years earlier in a discovery motion. Petitioner, the State of Illinois, contends that such a result is foreclosed by our decision in *Arizona* v. *Youngblood,* 488 U. S. 51 (1988). There we held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.,* at 58. We agree with petitioner, grant the petition for certiorari and respondent's motion for leave to proceed *in forma pauperis,* and reverse the judgment of the Appellate Court.

In September 1988, Chicago police arrested respondent in the course of a traffic stop during which police observed him furtively attempting to conceal a plastic bag containing a white powdery substance. Four tests conducted by the Chicago Police Crime Lab and the Illinois State Police Crime Lab confirmed that the bag seized from respondent contained cocaine.

Respondent was charged with possession of cocaine in the Circuit Court of Cook County in October 1988. He filed a motion for discovery eight days later requesting all physical evidence the State intended to use at trial. The State responded that all evidence would be made available at a reasonable time and date upon request. Respondent was released on bond pending trial. In July 1989, however, he failed to appear in court, and the court issued an arrest warrant to secure his presence. Respondent remained a fugitive for over 10 years, apparently settling in Tennessee. The outstanding arrest warrant was finally executed in November 1999, after respondent was detained on an unrelated matter. The State then reinstated the 1988 cocaine-possession charge.

Before trial, the State informed respondent that in September 1999, the police, acting in accord with established procedures, had destroyed the substance seized from him during his arrest. Respondent thereupon formally requested production of the substance and filed a motion to dismiss the cocaine-possession charge based on the State's destruction of evidence. The trial court denied the motion, and the case proceeded to a jury trial. The State introduced evidence tending to prove the facts recounted above. Respondent's case in chief consisted solely of his own testimony, in which he denied that he ever possessed cocaine and insinuated that the police had "framed" him for the crime. The jury returned a verdict of guilty, and respondent was sentenced to one year of imprisonment.

The Appellate Court reversed the conviction, holding that the Due Process Clause required dismissal of the charge. Relying on the Illinois Supreme Court's decision in *Illinois* v. *Newberry,* 166 Ill. 2d 310, 652 N. E. 2d 288 (1995), the Appellate Court reasoned:

> "'Where evidence is requested by the defense in a discovery motion, the State is on notice that the evidence must be preserved, and the defense is not required to make an independent showing that the evidence has exculpatory value in order to establish a due process violation. If the State proceeds to destroy the evidence, appropriate sanctions may be imposed even if the destruction is inadvertent. No showing of bad faith is necessary.'" App. to Pet. for Cert. 12 (quoting *Newberry, supra,* at 317, 652 N. E. 2d, at 292) (citation omitted in original).

The Appellate Court observed that *Newberry* distinguished our decision in *Youngblood* on the ground that the police in *Youngblood* did not destroy evidence subsequent to a discovery motion by the defendant. App. to Pet. for Cert. 13. While acknowledging that "there is nothing in the record to

indicate that the alleged cocaine was destroyed in bad faith," *id.*, at 15, the court further determined that *Newberry* dictated dismissal because, unlike in *Youngblood,* the destroyed evidence provided respondent's "only hope for exoneration," App. to Pet. for Cert. 15, and was " 'essential to and determinative of the outcome of the case,' " App. to Pet. for Cert. 16 (quoting *Newberry, supra,* at 315, 652 N. E. 2d, at 291). Consequently, the court concluded that respondent "was denied due process when he was tried subsequent to the destruction of the alleged cocaine." App. to Pet. for Cert. 16. The Illinois Supreme Court denied leave to appeal.*

We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. See *Brady* v. *Maryland,* 373 U. S. 83 (1963); *United States* v. *Agurs,* 427 U. S. 97 (1976). In *Youngblood,* by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U. S., at 57. We concluded that the failure to preserve this "potentially

---

*Respondent suggests that we lack jurisdiction because the Appellate Court relied on *Newberry,* which in turn relied on an adequate and independent state ground. See, *e. g., Michigan* v. *Long,* 463 U. S. 1032, 1040–1042 (1983). Respondent is correct that *Newberry* relied on both the Due Process Clause, and in the alternative, Illinois Supreme Court Rule 415(g)(i) (1990). 166 Ill. 2d, at 314–317, 652 N. E. 2d, at 290–292. The Appellate Court, however, relied only on the portion of *Newberry* that addressed due process, and the Appellate Court based its decision solely on the Due Process Clause. Accordingly, we have jurisdiction to review that decision. See, *e. g., Long, supra,* at 1038, n. 4 ("We may review a state case decided on a federal ground even if it is clear that there was an available state ground for decision on which the state court could properly have relied" (citing *Beecher* v. *Alabama,* 389 U. S. 35, 37, n. 3 (1967) *(per curiam)*)).

useful evidence" does not violate due process *"unless a criminal defendant can show bad faith on the part of the police." Id.,* at 58 (emphasis added).

The substance seized from respondent was plainly the sort of "potentially useful evidence" referred to in *Youngblood,* not the material exculpatory evidence addressed in *Brady* and *Agurs.* At most, respondent could hope that, had the evidence been preserved, a *fifth* test conducted on the substance would have exonerated him. See *Youngblood,* 488 U. S., at 57. But respondent did not allege, nor did the Appellate Court find, that the Chicago police acted in bad faith when they destroyed the substance. Quite the contrary, police testing indicated that the chemical makeup of the substance inculpated, not exculpated, respondent, see *id.,* at 57, n., and it is undisputed that police acted in "good faith and in accord with their normal practice," *id.,* at 56 (internal quotation marks omitted) (quoting *California* v. *Trombetta,* 467 U. S. 479, 488 (1984), in turn quoting *Killian* v. *United States,* 368 U. S. 231, 242 (1961)). Under *Youngblood,* then, respondent has failed to establish a due process violation.

We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police. Indeed, the result reached in this case demonstrates why such a *per se* rule would negate the very reason we adopted the bad-faith requirement in the first place: to "limi[t] the extent of the police's obligation to preserve evidence to reasonable grounds and confin[e] it to that class of cases where the interests of justice most clearly require it." 488 U. S., at 58.

We also disagree that *Youngblood* does not apply whenever the contested evidence provides a defendant's "only hope for exoneration" and is " 'essential to and determinative of the outcome of the case.' " App. to Pet. for Cert. 15–16 (citing *Newberry, supra,* at 315, 652 N. E. 2d, at 291). In *Youngblood,* the Arizona Court of Appeals said that the destroyed evidence "could [have] eliminate[d] the defendant

as the perpetrator." 488 U. S., at 54 (quotation marks and citations omitted). Similarly here, an additional test might have provided the defendant with an opportunity to show that the police tests were mistaken. It is thus difficult to distinguish the two cases on this basis. But in any event, the applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between "material exculpatory" evidence and "potentially useful" evidence. 488 U. S., at 57–58. As we have held, *supra*, at 548, the substance destroyed here was, at best, "potentially useful" evidence, and therefore *Youngblood*'s bad-faith requirement applies.

The judgment of the Appellate Court of Illinois is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

While I did not join the three Justices who dissented in *Arizona* v. *Youngblood*, 488 U. S. 51 (1988), I also declined to join the majority opinion because I was convinced then, and remain convinced today, that "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." *Id.*, at 61 (STEVENS, J., concurring in judgment).* This, like *Youngblood*, is not such a case.

---

*\*Youngblood*'s focus on the subjective motivation of the police represents a break with our usual understanding that the presence or absence of constitutional error in suppression of evidence cases depends on the character of the evidence, not the character of the person who withholds it. *United States* v. *Agurs*, 427 U. S. 97, 110 (1976). Since *Youngblood* was decided, a number of state courts have held as a matter of state constitutional law that the loss or destruction of evidence critical to the defense does violate due process, even in the absence of bad faith. As the Con-

Neither is it a case that merited review in this Court, however. The judgment of the Illinois Appellate Court has limited precedential value, and may well be reinstated on remand because the result is supported by the state-law holding in *People* v. *Newberry,* 166 Ill. 2d 310, 652 N. E. 2d 288 (1995). See *ante,* at 547, n. In my judgment the State's petition for a writ of certiorari should have been denied.

---

necticut Supreme Court has explained, "[f]airness dictates that when a person's liberty is at stake, the sole fact of whether the police or another state official acted in good or bad faith in failing to preserve evidence cannot be determinative of whether the criminal defendant received due process of law." *State* v. *Morales,* 232 Conn. 707, 723, 657 A. 2d 585, 593 (1995) (footnote omitted). See also *State* v. *Ferguson,* 2 S. W. 3d 912, 916–917 (Tenn. 1999); *State* v. *Osakalumi,* 194 W. Va. 758, 765–767, 461 S. E. 2d 504, 511–512 (1995); *State* v. *Delisle,* 162 Vt. 293, 309, 648 A. 2d 632, 642 (1994); *Ex parte Gingo,* 605 So. 2d 1237, 1241 (Ala. 1992); *Commonwealth* v. *Henderson,* 411 Mass. 309, 310–311, 582 N. E. 2d 496, 497 (1991); *State* v. *Matafeo,* 71 Haw. 183, 186–187, 787 P. 2d 671, 673 (1990); *Hammond* v. *State,* 569 A. 2d 81, 87 (Del. 1989); *Thorne* v. *Department of Public Safety,* 774 P. 2d 1326, 1330, n. 9 (Alaska 1989).