J-S18014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN DAVID TAYLOR | : | |
| | : | |
| Appellant | : | No. 907 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 24, 2024
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-CR-0000453-2021

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                 **FILED: SEPTEMBER 18, 2025**

Appellant, Brian David Taylor, appeals from the June 24, 2024 judgment of sentence entered in the Bedford County Court of Common Pleas following his conviction by a jury of Aggravated Assault and related crimes.  Appellant challenges the discretionary aspects of his sentence, the trial court's denial of his **Brady**[1] claim, and its jury instructions.  After careful review, we affirm the judgment of sentence.

We glean the following factual and procedural history from the trial court's opinion and the certified record.  At approximately midnight on November 5, 2021, Appellant and Robert Joseph Mayne, Jr. (Victim) had an altercation in Rookeez Bar in Coaldale Borough of Bedford County, during

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

which a verbal argument over a game of pool escalated into Victim pushing Appellant off a barstool. Appellant then left the bar, and Victim and Victim's brother followed him. Once outside, Appellant pulled a knife out of his pocket and slashed Victim's throat. Appellant attempted to leave the scene in his car, but Victim's brother and others prevented Appellant from leaving until law enforcement and emergency services arrived. Soon after their arrival, state troopers placed Appellant into custody and recovered the knife. Appellant never disputed injuring Victim; rather, he argued that his actions were justified by his fear of Victim.

In investigating the incident, Pennsylvania State Trooper Patrick Kelly requested surveillance video from the bar but did not specifically request footage from both the interior and exterior cameras. Troopers did not pick up the video from the bar until months after the incident. The video included footage from only the exterior camera. Following defense counsel's request, the Commonwealth determined that the bar had not saved footage from the interior camera, which Appellant argues would have supported his justification defense.

At a jury trial beginning on May 14, 2024, Victim and his brother testified as well as investigating officers, including Trooper Kelly. The Commonwealth also presented the video from the exterior surveillance camera.

Appellant testified in his own defense and presented a character witness. In light of the missing interior surveillance footage, the defense sought to introduce evidence from other cases in which Trooper Kelly allegedly

suppressed evidence or had violated a suspect's rights under **Miranda.**[2]  The court prohibited the evidence, opining that it was "very collateral to [the Trooper's] credibility [and] potentially very confusing for the jury" as it would require counsel to try the other cases in the midst of the current case.  N.T., 5/15/24, at 79.

In preparing jury instructions, the trial court granted the Commonwealth's request to instruct the jury on consciousness of guilt based on Appellant's attempt to flee the scene but denied Appellant's request to instruct the jury that it could draw an adverse inference against the Commonwealth based on the missing interior surveillance footage.

On May 17, 2024, the jury found Appellant not guilty of Attempted Homicide but guilty of Aggravated Assault, Possessing Instrument of Crime ("PIC"), Simple Assault, and Recklessly Endangering Another Person.[3]  On June 24, 2025, the court sentenced Appellant to 3 to 10 years of incarceration for Aggravated Assault, which exceeded the aggravated range of the sentencing guidelines, and a concurrent term of 9 months to 2 years for PIC, with the other crimes merging for purposes of sentencing.[4]  Appellant filed post-sentence motions, which the trial court denied on July 10, 2024.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[3] 18 Pa.C.S. §§ 2702(a)(4), 907(b), 2701(a)(1), and 2705, respectively.

[4] The court noted that, given Appellant's prior record score of 1, the standard range sentence for Aggravated Assault would be 12 months to 18 months, plus 9 months for the aggravated range.  N.T. Sent., 6/24/24, at 2-3

On July 26, 2024, Appellant filed a notice of appeal. Appellant and the court complied with Pa.R.A.P. 1925.

Appellant presents the following issues on appeal:

I. Whether the trial court erred and/or abused its discretion in sentencing [Appellant] to a sentence above the aggravated range[?]

II. Whether trial court erred and/or abused its discretion when instructing the jury on consciousness of guilt – fligh[]t and refusing to instruct the jury on adverse inference-missing evidence[?]

III. Whether the trial court erred and/or abused its discretion when not dismissing the charges due to a **Brady** violation and not all[ow]ing [Appellant] to present evidence of other similar instances of the affiant's misconduct suppressing evidence[?]

Appellant's Br. at 7 (some capitalization omitted).[5]

In his first issue, Appellant challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of a sentence "are not appealable as of right." **Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) preserving the issue at sentencing or in a motion to reconsider the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires "a separate section of the brief [setting forth] a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question pursuant to 42 Pa.C.S. § 9781(b). **Id.**; Pa.R.A.P. 2119(f).

---

[5] As Appellant's Brief is unpaginated, we will utilize the pagination of the electronically filed document.

- 4 -

The record reflects that Appellant satisfied the first three requirements. Accordingly, we consider whether he has presented substantial questions. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation and internal quotation marks omitted). An appellant may assert a substantial question by claiming that the trial court imposed a sentence outside the sentencing guidelines without providing sufficient reasons. *See Commonwealth v. Beatty*, 227 A.3d 1277, 1287 (Pa. Super. 2020).

Appellant contends that his sentence of 3 to 10 years of incarceration for Aggravated Assault was manifestly excessive as it was "double the top of the standard range and nine [] months over the aggravated range." Appellant's Br. at 14. Appellant claims that the court in imposing the sentence mischaracterized the gravity of his offense, essentially sentencing him for Attempted Homicide, despite the jury's acquittal, and failed to address adequately his rehabilitative needs. As in *Beatty*, we conclude that Appellant presents a substantial question by challenging the sufficiency of the court's reasons for sentencing him outside the guidelines. Thus, we will consider the merits of his claim.

It is well-established that "sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on

appeal absent a manifest abuse of discretion." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1263 (Pa. Super. 2012) (citation omitted). To demonstrate an abuse of discretion, the defendant must "establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa. Super. 2014) (citation omitted).

In imposing a sentence, a court should consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). After considering "the nature and circumstances of the crime and the history, character, and condition of the defendant," the trial court should impose total confinement if: "(1) there is undue risk that . . . the defendant will commit another crime; (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or (3) a lesser sentence will depreciate the seriousness of the crime of the defendant." 42 Pa.C.S. § 9725. When "a court imposes a sentence outside of the Sentencing Guidelines, the court must provide, in open court, a contemporaneous statement of reasons in support of its sentence." ***Beatty***, 227 A.3d at 1287 (citation omitted).

We defer to the trial court's consideration of sentencing factors as it is "in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or

indifference." ***Commonwealth v. Summers***, 245 A.3d 686, 696 (Pa. Super. 2021) (citation omitted). Subsection 9781(c), however, mandates that this Court vacate a sentence if the sentencing court "applied the sentencing guidelines erroneously;" applied the guidelines to a case "where the application of the guidelines would be clearly unreasonable;" or imposed an unreasonable sentence "outside the sentencing guidelines[.]" 42 Pa.C.S. § 9781(c); ***see also*** 42 Pa.C.S. § 9781(d). When the sentencing court has the benefit of a pre-sentence investigation report, "we presume that [it] was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors" when imposing the sentence. ***Commonwealth v. Sexton***, 222 A.3d 405, 422 (Pa. Super. 2019) (citation omitted).

Appellant first contends that the court failed to consider adequately his health concerns, the effect that his health concerns would have on his rehabilitative needs, and his personal characteristics. ***Id.*** at 18-20. Appellant presented testimony from himself and others describing his 23-year history of back injury and resulting disability. Appellant contends that the court failed to consider this evidence sufficiently as it merely stated, "I guess I'll take into account his physical ailments." ***Id.*** (quoting N.T. Sent., 6/24/24, at 25).

Second, Appellant claims that the court abused its discretion in rejecting the sentencing guidelines for Aggravated Assault and essentially sentencing him for Attempted Homicide, despite the jury's acquittal of that charge. ***Id.*** at 20-21. Appellant emphasizes that the court in sentencing Appellant stated

that the crime "almost resulted in a homicide." *Id.* at 20 (quoting N.T. Sent. at 26). Appellant contends that the court "focused nearly entirely on the perceived gravity of the offense and protection of the public" and did not provide sufficient consideration of Appellant's rehabilitative needs, as well as his "good works" and "generally crime free life." *Id.* at 14, 21.

After careful consideration, we conclude that the trial court did not abuse its discretion in sentencing Appellant.[6] First, despite the court's use of the phrase "I guess," the record demonstrates that the court considered Appellant's "physical ailments." N.T. Sent. at 25-26. Moreover, the court expressly stated that it had reviewed Appellant's pre-sentence investigation report. *Id.* at 2. As the trial court is in the best position to assess the sentencing factors, we refuse to reweigh them on appeal.

Next, we find no merit to Appellant's claim that the trial court's sentence overrode the jury's acquittal of Attempted Homicide. Rather, during sentencing, the trial court explained its reasons for exceeding the guidelines for Aggravated Assault based upon the severity of the injury. N.T. Sent. at 23-26. The court opined that proof of "bodily injury with a deadly weapon" as required for Aggravated Assault "does not take into account where the injury happened and . . . the extent of the injury[.]" N.T. Sent. at 25. The court emphasized the "big gash" in Victim's neck and the fact that "a half inch" difference could have resulted in a "homicide case." *Id.* at 24. Moreover, the

---

[6] In its opinion, the trial court relied upon its reasoning set forth at the sentencing hearing. Trial Ct. Op., 11/16/24, at 4 (citing N.T. Sent. at 2-27).

court stated that there was a "strong need to protect the public" and to address Appellant's rehabilitative needs, where Appellant was willing to escalate a "shoving match into a knife fight." *Id.* at 25-26. Thus, the court did not sentence Appellant for Attempted Homicide, but rather for a severe Aggravated Assault. Based upon the court's cogent reasons for exceeding the sentencing guidelines, we conclude that the court did not abuse its discretion.

\* \* \*

Appellant next challenges the court's jury instructions. "[A] trial court has wide discretion in fashioning jury instructions[,]" and we will reverse "only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted). Thus, the party seeking reversal must demonstrate that the instruction constituted "an abuse of discretion or an inaccurate statement of the law[.]" *Antidormi*, 84 A.3d at 754 (citation omitted).

Notably, "[t]he trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal." *Sandusky*, 77 A.3d at 667 (citation omitted). Indeed, "a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014) (*en banc*) (citations omitted).

Appellant claims that the trial court erred and abused its discretion regarding two aspects of the jury instruction. First, Appellant challenges the trial court's decision to provide Pennsylvania Suggested Standard Criminal Jury Instruction 3.14, addressing consciousness of guilt based on flight. Appellant's Br. at 22-25. Appellant emphasizes that both Victim's brother and Appellant testified that Appellant went to his car after the incident but did not leave the scene because bar patrons surrounded his car. *Id.* at 24-25.

We conclude that Appellant waived this claim by failing to designate where in the record he preserved this issue. Pa.R.A.P. 2101, 2119(c). Indeed, our review of the relevant portion of the transcript reveals that Appellant did not object to the court's several statements of its intent to provide a "flight" charge. N.T., 5/17/24, at 2-10; *see* Pa. R. Crim. P. 647 (requiring specific objections to jury charges prior to jury deliberations).

Second, Appellant challenges the court's refusal to provide Pennsylvania Suggested Standard Criminal Jury Instruction 3.21(B), permitting an adverse inference based upon missing evidence, specifically the interior surveillance footage. Appellant's Br. at 25-28. In relevant part, the instruction states:

> If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a common-sense inference that the item would have been evidence unfavorable to that party. The three necessary factors are:
>
> **First**, that the item is available to that party and not to the other;
>
> **Second**, that it appears the item contains or shows special information material to the issue; and

- 10 -

***Third***, that the item would not be merely cumulative evidence.
Pa. S.S.J.I. (Crim) § 3.21B (4th ed. 2024) (emphasis in original).

Appellant argues that the missing surveillance video satisfies the three requirements for the instruction. First, Appellant claims that the video was not available to him because the Commonwealth did not obtain it from Rookeez. Appellant's Br. at 26. Second, Appellant maintains that the interior surveillance footage was clearly material as his case relied upon a "justification claim" based upon Victim physically assaulting him inside the bar. ***Id.*** at 26. Finally, he states that the video would not have been cumulative as it "constitutes the best evidence of the initial altercation." ***Id.*** at 27.

After review, we conclude that the trial court did not abuse its discretion in denying the adverse inference instruction. As the trial court explained, Appellant failed to satisfy the first requirement that the video be available to the Commonwealth and not Appellant because the surveillance footage was never in the "sole possession of the Commonwealth" as "[i]t was owned by the bar." N.T., 5/17/24, at 4-5. Thus, the court opined that Appellant "had the same opportunity to access the video evidence as the Commonwealth did." Trial Ct. Op. at 3. We conclude that the court did not abuse its discretion in denying this instruction.

* * *

In his final issue, Appellant asserts another claim related to the missing video. He contends that the trial court erred in refusing to dismiss the charges despite his claim that the Commonwealth violated ***Brady*** by failing to obtain

- 11 -

and provide the bar's interior surveillance footage. Appellant's Br. at 28-33. "This issue presents a question of law, for which our standard of review is *de novo*[,] and our scope of review is plenary." ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1084 (Pa. 2020).

In ***Brady***, the United States Supreme Court addressed violations of due process resulting from the prosecution's suppression of evidence. ***Brady***, 373 U.S. at 87. "[T]o establish a ***Brady*** violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the [Commonwealth suppressed evidence], either willfully or inadvertently; and (3) prejudice ensued." ***Commonwealth v. Spotz***, 47 A.3d 63, 84 (Pa. 2012). The defendant has the burden of proving, by reference to the record, that the Commonwealth withheld or suppressed evidence. ***See Commonwealth v. Hutchinson***, 25 A.3d 277, 310 (Pa. 2011).

Special analysis is necessary for ***Brady*** claims involving destroyed evidence, which implicate a defendant's "constitutionally guaranteed access to evidence." ***Commonwealth v. Snyder***, 963 A.2d 396, 401 (Pa. 2009) (citation omitted). The first step is to determine whether the destroyed evidence is "materially exculpatory" or "potentially useful." ***Id.*** at 405. The failure to preserve and disclose "materially exculpatory" evidence results in a due process violation regardless of law enforcement's good or bad faith. ***Illinois v. Fisher***, 540 U.S. 544, 547 (2004). In contrast, "the failure to preserve [] 'potentially useful evidence' does not violate due process unless a

criminal defendant can show bad faith on the part of the police." ***Id.*** at 547-48 (citation and some internal quotation marks omitted).

Appellant asserts that he met the three elements of a ***Brady*** claim: (1) the video would have been favorable to Appellant as it would have provided "clear and uncontroverted evidence that the alleged victim was the initial aggressor and had physically assaulted [] Appellant[;]" (2) the Commonwealth willfully suppressed this evidence by not specifically requesting it or timely obtaining it; and (3) prejudice ensued because Appellant was not able to present the best evidence to support his justification defense based upon the events occurring inside the bar. ***Id.*** at 29-33. He also argues that the trial court abused its discretion in preventing him from presenting evidence allegedly demonstrating Trooper Kelly's bad faith actions in other cases, which he claimed would support his argument that the trooper acted in bad faith in this case. ***Id.*** at 28.

As with the jury instruction issue, we conclude that the trial court did not abuse its discretion in rejecting Appellant's ***Brady*** claim because the Commonwealth never possessed or destroyed the interior surveillance video. Trial Ct. Op. at 2. Rather, Rookeez possessed the video. "Because the Commonwealth did not possess the evidence, it could not suppress the evidence, willfully or inadvertently." ***Commonwealth v. Miller***, 212 A.3d 1114, 1126 (Pa. Super. 2019).

As none of Appellant's issues warrant relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

President Judge Emeritus Stevens join the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/18/2025